IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 21, 2018

**STATE OF TENNESSEE v. TRE DESEAN BELL**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-1563     Mark J. Fishburn, Judge**
_____

**No. M2017-00843-CCA-R3-CD**
_____

The Defendant-Appellant, Tre Desean Bell, was convicted by a Davidson County jury of voluntary manslaughter, see T.C.A. § 39-13-211, for which he received a sentence of six years in continuous confinement. On appeal, the Defendant argues that the trial court erred in (1) denying his request for judicial diversion; (2) imposing the maximum sentence permissible; and (3) imposing a sentence of continuous confinement. Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, and NORMA MCGEE OGLE, JJ., joined.

Dawn Deaner, District Public Defender, Jeffrey A. DeVasher (on appeal), Assistant Public Defender, James M. Chaffin (at trial and on appeal), Assistant Public Defender, Annie Berry (at trial), Assistant Public Defender, Nashville, Tennessee, for the appellant, Tre Desean Bell.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Glenn Funk, District Attorney General; and Janice Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the morning of August 2, 2013, after learning that his ex-girlfriend was in a relationship with the victim, Delano Blair, the Defendant approached and fired several shots at the victim and killed him. The Defendant was indicted by a Davidson County grand jury for first degree murder, and following a jury trial, he was convicted of voluntary manslaughter and sentenced to six years imprisonment as a Range I offender. At the January 11, 2017 sentencing hearing, Sergeant Joseph Winters of the Metro

Nashville Police Department's gang unit was tendered an expert in gangs and drug investigations. Sergeant Winters described his knowledge of the Vice Lord gang and testified that he was not previously familiar with the Defendant or the victim as gang members. However, he explained that certain evidence adduced at trial and presented at sentencing showed that the Defendant was likely an unknown member of the Vice Lord gang and the People Nation. He came to this conclusion based on his review of the database of confirmed and unknown gang members, transcripts of the Defendant's texts and Facebook messages, and transcripts and audio of the Defendant's phone calls while he was in jail.

Sergeant Winters stated that the Defendant's Facebook messages with various individuals from 2010 to 2014 revealed a strong familiarity with the gang, making "numerous references to symbols . . . associated with the People Nation [and] Vice Lords," including explicit statements regarding his gang rank and saying "I'm Vice Lord[.]" Sergeant Winters also pointed out multiple references in the Defendant's Facebook messages from 2011 to 2014 to selling drugs, including marijuana. He noted that the Defendant's phone number changed often throughout the messages and explained that "an experienced seller [of drugs] will change numbers on a fairly frequent basis just because they're aware of the tactics that [the police] use[.]" Over defense counsel's objection, those messages were admitted into evidence.

The Defendant's jail phone call from August 2016 was admitted into evidence and played for the court. Sergeant Winters testified that this call was between the Defendant and his brother, Victor, and that specific references to the Vice Lords can be heard on the call, including the Defendant's gang rank.

On cross-examination, Sergeant Winters confirmed that he could not definitively connect the victim's murder with gang affiliation. On redirect, Sergeant Winters testified to additional Facebook messages from the Defendant, specifically one wherein he stated, "I gotta kill my baby mama baby daddy. He done threatened me and sh[-]t. I know where he lives," and "I'm ready to kill dude[.]" The recipient of those messages also asked the Defendant, "You got a lick for me[?]" which Sergeant Winters explained indicates "some kind of robbery or theft." The Defendant responded that that the target was "named Laneo (as stated), a chump," and Sergeant Winters confirmed that "Laneo" could reference "Lano." These additional messages were admitted into evidence.

The State admitted the Defendant's presentence report and pre-trial motion transcript into evidence and incorporated by reference "all the testimony from trial, as well as the pretrial motions" into the sentencing hearing. The victim's mother gave a statement to the court on behalf of the victim's family describing how the victim's death had affected them. Defense counsel introduced the statement of Rick Slaughter, which

expressed his support of the Defendant, and presented several character witnesses. Tracy Bates testified that she was a criminal justice teacher and had known the Defendant since he was in middle school. She said the Defendant was not a "troublemaker" and that he dated her daughter when they were teenagers. Bates stated that her daughter maintained contact with the Defendant and that she was very surprised to learn that the Defendant was involved in the instant offense. She said she did not believe the Defendant was violent or a danger to others, but said she thought he could benefit from psychological counseling. She testified that she supported a sentence of probation and expressed her desire to support the Defendant once the case was over, including helping him find a job. On cross-examination, Bates testified that she was not previously aware that the Defendant sold drugs or that he was a gang member. Although she was disappointed in the Defendant's criminal activity, she said it did not change her perception of him as a person.

Chris Hilton testified that he had known the Defendant since middle school and that they had maintained a friendship since then. He described the Defendant as "very uplifting" and like a "big brother" to him and said the Defendant was one of the reasons he went to college. He said he was "flabbergasted" and "hurt" to learn of the Defendant's involvement because he "never in a million years would have thought that [the Defendant] would or he could do something like that." Hilton testified that he supported the Defendant receiving probation and that he would support him if he were released. On cross-examination, Hilton testified that he was not previously aware that the Defendant sold drugs or was a gang member. Although he was disappointed in the Defendant's criminal activity, he said it did not change his perception of him as a person.

The Defendant gave an allocution to the court and explained that he did not intend to take a life but that he was only acting out of self-defense. In response to the family's statement regarding the impact the victim's death had on them, the Defendant said, "it's just as hard on me." He explained that "as far as other choices that I've made, as in selling weed or becoming a member of an organization, I've made mistakes, but I didn't let neither one of those things overcome the person that I really am."

At the conclusion of the sentencing hearing, the trial court stated that the evidence showed that, once the Defendant learned that his ex-girlfriend was dating the victim, "he drove up with a gun, pointed it at [the victim], [] the [victim] saw what was about to happen and he turned to run and got shot before he could get out of the line of fire." The trial court said that "there's nothing to suggest that there was any self-defense in this case, and nothing to suggest or to justify that [the Defendant] was under some emotional state that overwhelmed his ability to rationalize on a reasonable basis." The trial court reasoned:

[T]he [c]ourt has considered the evidence presented at the trial and at the sentencing hearing, the presentence report, sentencing principles embodied in [Tennessee Code Annotated section] 40-35-103, arguments made as to alternative sentencing, including judicial diversion, the nature and characteristics of the criminal conduct involved, the evidence and information offered on enhanced and in mitigating factors, the allocution made by the [D]efendant on his own behalf at the sentencing hearing, the [D]efendant's potential for rehabilitation or treatment, as well as general purposes for which the Sentencing Reform Act of 1989 was enacted, as set forth in [Tennessee Code Annotated section] 40-35-102[.]

The trial court found that the Defendant was a Range I, standard offender and applied several enhancement factors but no mitigating factors. The court found that the Defendant had a "history of criminal behavior," including selling marijuana, pills, and other drugs, and that he was unlikely to be amenable to correction as "he knew that he was doing wrong and he continued to do it for a period of at least four years[.]" The court determined that there may have been other people in the area where the shooting occurred, creating a risk to human life, but stated that it was not putting significant weight on that factor. The court also found that the Defendant "possessed or employed a firearm during the commission of the offense[.]" The trial court further found that there was no evidence of provocation and that the evidence adduced at trial could have supported a conviction of first degree murder. The court asserted that the jury rejected the Defendant's claim of self-defense and that there was "no evidence of self-defense at all." The court further rejected the Defendant's claim that he assisted the authorities with the case and found his allocution statement to be insincere.

Regarding alternative sentencing, the trial court found that the Defendant's physical and mental conditions were in good standing, that his work history "appeared to be good for the last couple of years[,]" that his educational history was average, that his character "appear[ed] to have been superlative up until about the age of 17, 18," and that his social history reflected that, although the evidence does not show that "he was engaged in gangster activity, [] he was engaged with a gang." The court noted that the Defendant's family and community support seemed very strong but stated that "it didn't prevent him from committing this crime[.]" The court acknowledged that the Defendant had a history of criminal behavior but no criminal record. The court also considered the Defendant's "honesty and candor[,]" finding that the evidence was in direct contradiction to the Defendant's testimony at trial and sentencing, and noting that the Defendant changed his testimony regarding "very substantive issues" multiple times throughout. The court also found that society's interests in deterring this kind of behavior and conflict resolution outweighed the Defendant's interests.

The trial court ultimately concluded that "[a]lthough the [D]efendant qualifies for alternative sentencing, the [c]ourt finds the [D]efendant is not an appropriate candidate to receive alternative sentencing because confinement is necessary to avoid depreciating the seriousness of the offense[.]" The trial court denied judicial diversion and alternative sentencing and imposed a sentence of six years. The Defendant timely filed a notice of appeal.

**ANALYSIS**

**I. <u>Judicial Diversion.</u>** The Defendant argues that the trial court erroneously denied his request for judicial diversion by relying on the circumstances of the offense and finding that the Defendant was not amenable to correction, even though "many other relevant factors weighed in the [D]efendant's favor[.]" The State responds that, although the Defendant was "indisputably a 'qualified defendant'" for judicial diversion, the trial court properly considered and weighed the applicable factors in denying the Defendant's request for judicial diversion. Upon review, we agree with the State.

In <u>State v. King</u>, 432 S.W.3d 316, 324-25 (Tenn. 2014), the Tennessee Supreme Court held that the abuse of discretion standard of review accompanied by a presumption of reasonableness, which was delineated in <u>Bise</u> and its progeny, applied to appellate review of a trial court's decision to grant or deny judicial diversion. However, the court made clear that the application of the <u>Bise</u> standard of review does not abrogate the common law factors for judicial diversion set out in <u>State v. Parker</u>, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996), and <u>State v. Electroplating, Inc.</u>, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998).

Tennessee Code Annotated section 40-35-313 outlines the requirements for judicial diversion. A qualified defendant is defined as a defendant who pleads guilty to or is found guilty of a misdemeanor or a Class C, D, or E felony; is not seeking diversion for a sexual offense or a Class A or B felony; and does not have a prior conviction for a felony or a Class A misdemeanor. T.C.A. § 40-35-313(a)(1)(B)(i). After a qualified defendant either pleads guilty or is found guilty, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt. T.C.A. § 40-35-313(a)(1)(A). Upon the qualified defendant completing a period of probation, the trial court is required to dismiss the proceedings against him. T.C.A. § 40-35-313(a)(2). The qualified defendant may then request that the trial court expunge the records from the criminal proceedings. T.C.A. § 40-35-313(b).

The trial court must consider the following factors in deciding whether a qualified defendant should be granted judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4)

- 5 -

the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. Electroplating, Inc., 990 S.W.2d at 229 (citing Parker, 932 S.W.2d at 958; State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993)). The trial court may consider the following additional factors: "'the [defendant]'s attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.'" State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (quoting State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988) (citations omitted)). The trial court must weigh all of the factors in determining whether to grant judicial diversion. Electroplating, Inc., 990 S.W.2d at 229 (citing Bonestel, 871 S.W.2d at 168). Finally, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997) (citing Bonestel, 871 S.W.2d at 168).

Turning to the case sub judice, the Defendant argues that the factors significantly weigh in his favor, asserting that he has no criminal history, that he is amenable to correction, and that the circumstances of the offense, while serious, were not so grave to outweigh the remaining factors. The State responds that the trial court properly considered and weighed the necessary factors in its determination to deny judicial diversion, emphasizing the deterrence value.

In denying judicial diversion, the trial court acknowledged that the Defendant had no prior convictions and that his mental and physical conditions were in good condition. However, the court stated:

> He showed his ability to be a responsible, productive citizen, but chose, despite that ability, to engage in a regular course of criminal activity throughout the same period of time, if not longer, than his work period. It didn't impede his criminal activity at all in terms of selling drugs. So the fact that he had a fairly decent work history loses a lot of effectiveness or weight because it didn't deter him from continuing to engage in criminal activity.

The court ultimately concluded that the Defendant was "not an appropriate candidate to receive alternative sentencing because confinement is necessary to avoid depreciating the seriousness of the offense[.]" The trial court further expressed that the denial of judicial diversion would serve the best interests of the public.

- 6 -

Our review of the record demonstrates that the trial court explicitly analyzed each of the <u>Electroplating, Inc.</u> and <u>Parker</u> factors on the record during its ruling. The trial court considered and weighed all of the required factors, identified those most relevant to the case, and placed on the record its reasons for denying diversion. Thus, the trial court's decision is presumed reasonable. Although the Defendant asserts that he was the perfect candidate for judicial diversion, the record reflects that several factors weighed against the Defendant, including the seriousness of the offense, amenability to correction, and deterrence value. <u>See</u> <u>State v. Parsons</u>, 437 S.W.3d 457, 496 (Tenn. Crim. App. 2011) (affirming the denial of judicial diversion where the defendant's amenability to correction and the circumstances of the offense weighed heavily against judicial diversion despite the satisfactory remaining factors) (citing <u>State v. Jonathan B. Dunn</u>, No. M2005-01268-CCA-R3-CD, 2006 WL 1627335, at *9 (Tenn. Crim. App. June 12, 2006) (affirming the denial of judicial diversion where, even though several factors weighed in the defendant's favor, the circumstances of the offense were "particularly troublesome")); <u>State v. Brian Carl Lev</u>, No. E2004-01208-CCA-R3-CD, 2005 WL 1703186, at *3 (Tenn. Crim. App. Mar. 22, 2005) ("The denial of judicial diversion may be based solely on the nature and circumstances of the offense, so long as all the other relevant factors have been considered, and this factor outweighs others that might favorably reflect on the [defendant]'s eligibility.") (citing <u>State v. Curry</u>, 988 S.W.2d 153, 158 (Tenn. 1999)). The trial court determined, and we agree, that these factors outweighed the other factors considered by the court. Accordingly, we conclude that the trial court did not abuse its discretion in denying the Defendant judicial diversion. He is not entitled to relief.

**II. Excessive Sentencing.** The Defendant also argues that the trial court erred in sentencing him to the maximum sentence within the applicable statutory range and erred in denying him probation or alternative sentencing by imposing a sentence of continuous confinement. The State responds that the trial court properly sentenced the Defendant within the statutory requirements. Upon review, we agree with the State.

This court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." <u>State v. Bise</u>, 380 S.W.3d 682, 707 (Tenn. 2012). Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." <u>Id.</u> at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." <u>Id.</u> This standard of review also applies to "questions related to probation or any other alternative sentence." <u>State v. Caudle</u>, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Pursuant to the 2005 amendments to the Sentencing Act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in § 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing; and
> (8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

T.C.A. § 40-35-210(b). The defendant has the burden of showing the impropriety of the sentence on appeal. T.C.A § 40-35-401(d), Sentencing Comm'n Cmts. In determining the proper sentence, the trial court must consider the defendant's potential for rehabilitation or treatment. T.C.A. §§ 40-35-102(3)(C), -103(5). In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" T.C.A. § 40-35-103(2), (4).

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. Id. (citing T.C.A. § 40-35-303(b) (1994 Supp.)).

A. Imposition of Maximum Sentence. The Defendant argues that the trial court imposed an excessive sentence. The Defendant specifically argues that the trial court erroneously applied enhancement factors without applying relevant mitigating factors. The State argues that the trial court properly imposed the maximum within-range sentence in this case and based its decision on the relevant factors and sentencing principles. Upon review, we conclude that the trial court did not abuse its discretion in sentencing the Defendant within the applicable statutory range.

- 8 -

The Defendant asserts that he should have received the benefit of three mitigating factors: (1) he committed the instant offense under unusual circumstances and did not have the proper motive; (2) he has no criminal record and expressed his "genuine remorse;" and (3) his sentence was not in line with the principles and purposes of the Sentencing Act. The Defendant further argues that the trial court's imposition of the maximum sentence was "greater than that deserved for the offense committed" and was not "the least severe measure necessary to achieve the purposes for which the sentence [was] imposed[.]" T.C.A. § 40-35-103(2), (4).

Here, the Defendant was convicted of voluntary manslaughter and was subject to a sentencing range of three to six years as a Range I offender convicted of a Class C felony. See T.C.A. §§ 39-13-211(b), 40-35-105(b), -112(a)(3). Thus, the trial court's sentence of six years was within the statutory range. In determining the appropriate length of the sentence, the trial court applied several enhancement factors, including his history of criminal behavior, his possession and employment of a firearm during the offense, and his lack of hesitation to commit a crime when the risk to human life was high. See T.C.A. § 40-35-114(1), (9), (10). The trial court did not find that any mitigating factors applied. On appeal, the Defendant argues that that the trial court relied solely on the risk to human life factor in its sentencing. However, the trial court explicitly stated that, while it considered this factor in its decision and multiple people were out in the neighborhood when the shooting occurred, it did not give it much weight. The record reflects that enhancement of the Defendant's sentence was supported by the proper application of these factors. The trial court thoroughly considered the purposes and principles of sentencing before imposing a within-range sentence of six years. See Bise, 380 S.W.3d at 707-08. The Defendant is not entitled to relief.

B. Imposition of Continuous Confinement. The Defendant also argues that the trial court erred in imposing a sentence of continuous confinement. Specifically, he contends that the trial court failed to consider him for probation or alternative sentencing and that he does not meet the requirements for continuous confinement. The State responds that the trial court properly sentenced the Defendant to continuous confinement instead of probation by finding that "confinement was necessary to avoid depreciating the seriousness of the offense." Upon review, we conclude that the trial court did not abuse its discretion in denying an alternative sentence in this case.

The Defendant maintains that he does not have a long history of criminal behavior, that he does not have any prior convictions, that the State did not present evidence to show that a sentence of confinement would deter others in the jurisdiction from committing similar criminal acts, and that the Defendant has not previously been the subject of failed rehabilitative measures. The Defendant therefore asserts that he should have been granted supervised probation for his sentence.

Here, the Defendant was eligible for probation because his sentence was ten years or less and because the offense was not specifically excluded by statute. See T.C.A. § 40-35-303(a); State v. Langston, 708 S.W.2d 830, 832-33 (Tenn. 1986) (concluding that a defendant is eligible for probation if each of the sentences is ten years or less regardless of the effective sentence). However, an eligible defendant "is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303(b), Sentencing Comm'n Cmts. Although the trial court shall automatically consider probation as a sentencing alternative for eligible defendants, the defendant bears the burden of proving his or her suitability for probation. T.C.A. § 40-35-303(b). The defendant must demonstrate that probation would serve "the ends of justice and the best interest of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

Here, the trial court properly concluded that the Defendant was not deserving of an alternative sentence as the seriousness of the particular facts of his offense required confinement in order to deter similar behavior. The trial court was also concerned with the Defendant's history of criminal activity, dishonesty, and lack of candor. The record reflects that the trial court considered the relevant enhancement and mitigating factors in determining the proper sentence for the Defendant. The record also reflects that the trial court complied with the appropriate statutes and sentenced the Defendant within the range applicable to his conviction. Furthermore, the Defendant has failed to prove that he was suitable for probation or that probation would serve the best interests of himself and the public. Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, we conclude that the Defendant has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the trial court's sentence in this case. Caudle, 388 S.W.3d at 280. The Defendant is not entitled to relief.

**CONCLUSION**

Based on the foregoing reasoning and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE

- 10 -